Trenton R. Kashima (CA SBN No. 291405)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorney for Plaintiff*

*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY TOMASSIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER LIVING BRANDS LLC and SAFEWAY, INC., TRINIDAD BENHAM CORP., PRANA IMPORTS, INC. d/b/a PRANA GOURMET FOODS<br><br>Defendants. | Case No. 3:25-cv-05175-RS<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiff Mary Tomassian ("Plaintiff") individually and on behalf of all others similarly situated brings this Class Action Complaint against Defendants Better Living Brands LLC ("Better Living"), Safeway Inc. ("Safeway"), Trinidad Benham Corp., Prana Imports, Inc. (doing business as "Prana Gourmet Foods") ("Prana") (collectively "Defendants") for Defendants' reckless, and/or intentional practice of failing to disclose the presence of arsenic and cadmium (collectively "Heavy Metals") in their Signature Select Arborio Rice (the "Product").

2.     This action seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), restoring monies to the members of the proposed Class, who would not have purchased the Product had they known that it contained (or was at risk of containing) the Heavy Metals and/or would not have paid a premium price for the Product had they known the Product contained Heavy Metals.

3.     Plaintiff alleges the following based upon personal knowledge, as well as investigation by her counsel as to herself, and as to all other matters, upon information and belief. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein, which will become available after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

4.     Reasonable consumers expect the rice products they purchase for their individual and family consumption will be safe for human consumption and not be contaminated (or has a material risk of being contaminated) with Heavy Metals, substances that are known to accumulate in the body and pose significant and dangerous health consequences.

5.     Consumers lack the scientific knowledge necessary to determine whether Defendants' Product does in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the Product. Accordingly, reasonable consumers must and do rely on Defendants to: (1) know what their Product contains; (2) regularly test the Product to confirm its composition; and (3) properly and fully disclose those contents to consumers prior to purchase.

Product contents, particularly contents like Heavy Metals, are material to a reasonable consumer's purchasing decisions.

6.      Defendants are involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Product throughout the United States, including in this District.

7.      Defendants fail to disclose on their packaging that the Product contains (or has a material risk of containing) Heavy Metals.

8.      No reasonable consumer would expect, suspect, or understand that the Product contains or has a material risk of containing Heavy Metals.

9.      Defendants fail to disclose to consumers that the Product contains (or has a material risk of containing) Heavy Metals. Nowhere on the Product's packaging is it disclosed that it contains (or has a material risk of containing) Heavy Metals (hereinafter collectively referred to as "Omissions").

10.      Indeed, the Product's packaging affirmatively claims that the Product is "Kosher" "BPA-Free" "Certified Gluten Free" and "Non GMO." These statements are designed to convey to consumers that the Product is of the highest quality. These statements (hereinafter collectively referred to as "Misrepresentations") convey a false message in view of the Heavy Metal content of the Product.

11.      It was only through testing conducted that the general public became aware of the Heavy Metal content in Defendants' Product.

12.      Independent testing has detected the presence of cadmium and arsenic in the Product.

13.      Lab testing found that the Product contained 317 parts per billion of arsenic and 11.6 parts per billion of cadmium.[1]

_____

[1] What's in your family's rice?: Arsenic, Cadmium, and Lead in Popular Rice Brands— Plus 9 Safer Grains to Try (*available at* https://hbbf.org/sites/default/files/2025-05/Arsenic-in-Rice-Report_May2025_R5_SECURED.pdf).

14.     Based on the Omissions, no reasonable consumer had any reason to know, suspect, or expect that the Product contained Heavy Metals.   Furthermore, reasonable consumers like Plaintiff, who were purchasing the Product for consumption by themselves and their families, would consider the presence (or risk) of Heavy Metals to be a material fact when considering whether to purchase the Product.  Accordingly, Plaintiff and other reasonable consumers would not have purchased the Product or would have paid substantially less for it but for the Omissions and Misrepresentations.

15.     Defendants know their customers trust the quality of their Product and would not expect the Product to contain or have a material risk of containing Heavy Metals.  Defendants also know that reasonable consumers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.   Defendants further know that reasonable consumers would not knowingly consume, or feed to their families, products that contain Heavy Metals.

16.     Defendants knew the consumers to whom they market the Product would find their Omissions and Misrepresentations material and that they were in a special position of public trust to those consumers.

17.     The Omissions and Misrepresentations are deceptive, misleading, unfair, and/or false because the Product contains undisclosed Heavy Metals.

18.     The Omissions and Misrepresentations allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiff who paid a premium price for the Product that omitted material information as to the Product's true quality and value. Reasonable consumers, including Plaintiff, paid more for the Product than they would have had they known the truth about the Product, and Defendants continue to wrongfully induce consumers to purchase the Product.

19.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, during the Class Period, purchased for use and not resale any of Defendants' Product.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

20.     This Court has original jurisdiction over all causes of action herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and more than two-thirds of the Class reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

21.     This Court has general personal jurisdiction over Defendants because Defendants conduct and transact business in the state of California and contract to supply goods within the state of California, such that they have had continuous and systematic contacts with the state of California, Defendants place their Product in the stream of commerce targeted at California, and the injury alleged herein occurred when Plaintiff purchased the Product in California. Additionally, Defendant Safeway Inc. is headquartered in this District.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Defendant Safeway Inc. is headquartered in this District.

**PARTIES**

**Plaintiff Tomassian**

23.     Plaintiff Mary Tomassian ("Plaintiff") is, and at all times relevant hereto has been, a citizen of the state of California. She purchased the Product from an Albertson's store near Woodland Hills, California.

24.     Plaintiff purchased this Product beginning in approximately 2020. Plaintiff last purchased the Product shortly before she learned of the issues with Heavy Metals in the Product in March of 2025.

25.     Plaintiff believed that she was purchasing a high-quality rice product from Defendants. Prior to purchasing the Product, Plaintiff saw and relied upon the packaging of the Product. During the time she purchased and ate the Product, and due to the Omissions and Misrepresentations by Defendants, she was unaware the Product contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and

would not have purchased the Product if that information had been fully disclosed. Plaintiff would be willing to purchase the Product in the future if she could be certain that it did not contain (or have a material risk of containing) Heavy Metals.

**Defendants**

26. Defendant Better Living has a principal address in Pleasanton, CA. Defendant Better Living is a subsidiary of Safeway Inc. Better Living's principal address is P.O. Box 99, Pleasanton, CA 94566. Defendant Better Living is involved in the production, marketing, distribution, and sale of the Product throughout California and the United States. Defendant Better Living makes the private label products for Defendant Safeway, including the Product.

27. Safeway Inc. is a subsidiary of Albertsons Companies, Inc. and is a Delaware corporation headquartered in California. Defendant Safeway maintains its principal place of business at 11555 Dublin Canyon Rd., Pleasanton, CA 94588. Defendant Safeway is involved in the production, marketing, distribution, and sale of the Product throughout California and the United States. Defendant Safeway exercises plenary control over Defendant Better Living, its subsidiary, and controls its manufacturing and marketing efforts.

28. Trinidad Benham Corp. has its corporation headquartered in Denver, CO. Trinidad Benham Corp. principal address is 3650 S Yosemite St Ste 300 Denver, CO, 80237. Trinidad Benham Corp. is involved in the production, manufacturing, distribution and as a supplier of the rice for the Product throughout California and the United States.

29. Prana Imports, Inc. (doing business as "Prana Gourmet Foods") ("Prana"), has its principal place of business at 625 Pierce St Ste A, Somerset, New Jersey, 08873. Prana Gourmet Goods is private label manufacturer specializing in rice and cereals. Prana is involved in the production, manufacturing, distribution and as a supplier of the rice for the Product throughout California and the United States.

30. During the relevant time, Defendants controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of their Product. Defendants therefore had control over how to label their Product as to its contents.

31.     Defendants have been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Product throughout the United States, including in this District.  Defendants have done so continuously throughout the Class Period.  Defendants knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Product that did not disclose the presence of Heavy Metals.  Defendants are also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished product.

32.     Plaintiff relied upon the material Omissions missing from the Product's packaging, which was prepared, reviewed, and/or approved by Defendants and their agents and disseminated by Defendants and their agents through packaging that contained the Omissions.  The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Product.

## FACTUAL ALLEGATIONS

33.     Consumers have become increasingly concerned about the effects of dangerous contaminants in food products that they and their family members consume.  Companies, such as Defendants, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

34.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains Cadmium and Arsenic, or other unsafe and unhealthy substances, especially at the point of sale.  Therefore, consumers must and do rely on Defendants to truthfully and honestly report what their Product contains on their packaging or label.  Indeed, testing for toxic heavy metals requires expensive and destructive scientific testing.  Given the relatively low price of the Product, no reasonable consumer would engage in such testing before purchasing the Product.

35.     However, public reports and articles recently revealed that Defendants' Product

contains unsafe levels of Cadmium and Arsenic.[2]  Indeed, these levels of Cadmium and Arsenic exceed the maximum allowable dose levels ("MADLs") for this toxic heavy metal, posing serious health risks.  Despite these risks, Defendants failed to include any disclosures regarding Cadmium and Arsenic levels on their Product.

36.  Defendants knew and could not have been unaware of the Cadmium and Arsenic in the Product.  By law, Defendants have a responsibility to implement controls to significantly minimize or prevent exposure to toxic heavy metals in the Product.  Defendants manufacture and source the ingredients contained within the Product.  Defendants test the Product for quality control purposes, including the levels of toxic heavy metal such as Cadmium and Arsenic contained therein.  Additionally, Defendants receive Certificates of Analysis, and other certifications, from the suppliers of the ingredients used to create the Product.  These documents will also disclose the levels of chemicals and toxic heavy metals, such as Cadmium and Arsenic, contained in each constituent ingredient.  These documents and their own testing alert Defendants to the presence of any toxic heavy metals, such as Cadmium and Arsenic, in the Product.  Accordingly, Defendants have exclusive knowledge of the Cadmium and Arsenic levels in the Product, and Plaintiff and the Class could not have known about this risk.

37.  Consumers reasonably rely on the marketing and information on Defendants' labels in making purchasing decisions.  By marketing the Product as containing Rice, and not disclosing the presence of Cadmium and Arsenic, Defendants mislead reasonable consumers.

38.  Despite Defendants' knowledge of Cadmium and Arsenic in the Product, Defendants failed to provide any warning on the place that every consumer looks when purchasing a product–the packaging or labels—that the Product contains Cadmium and Arsenic.

39.  Defendants' concealment was material because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care.  Consumers such as Plaintiff and the Class

---

[2] https://www.cnn.com/2025/05/15/health/arsenic-cadmium-rice-wellness

Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the food packaging they buy. Defendants know that if they had not omitted that the Product contained unsafe levels of Cadmium and Arsenic and that the Product was not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Product (or purchased it at all).

40. Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

41. Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

42. In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for the Product. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

43. Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money because of Defendants' wrongful conduct.

**I.    Defendants Misrepresents the Product and Omits Any Mention of Heavy Metals on Their Packaging**

44. Defendants manufacture, design, test, package, label, market, advertise, promote, distributes and sell their Product throughout the United States, including in California.





45.     The Product's packaging affirmatively claims that the Product is "Kosher" "BPA-Free" "Certified Gluten Free" and "Non GMO." These statements are designed to convey to consumers that the Product is of the highest quality. Defendants' Product is available at numerous retail and online outlets throughout the United States, including California.

46.     Defendants intentionally misrepresented the quality of their Product and omitted the presence or material risk of Heavy Metals in the Product in order to induce and mislead reasonable consumers to purchase the Product and pay a price premium for it. The Omissions and

Misrepresentation are material because the involve the safety of the product and Defendants made partial representations regarding quality of the Product.

47.     As a result of the material Omissions and Misrepresentations, a reasonable consumer would have no reason to suspect the presence of or material risk of Heavy Metals in the Product without conducting his or her own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of the Product.

48.     Information regarding the true nature and/or presence of Heavy Metals in the Product was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of Heavy Metals in the Product from Plaintiff and Class members.

**II.     Due to the Presence and/or Material Risk of the Presence of Heavy Metals in the Product, the Omissions and Misrepresentations are Misleading**

**A.     <u>Heavy Metals</u>**

49.     Arsenic and cadmium are heavy metals whose harmful effects are well-documented, particularly in children.  Exposure to heavy metals puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose health risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  These facts underscore the importance of limiting heavy metal exposure and consumption.

50.     Given the negative effects of heavy metals (such as arsenic and cadmium) on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiff and members of the Class, as it relates to their purchasing decisions.

51.     Defendants know that the presence (or material risk) of Heavy Metals in their Product is material to reasonable consumers, including Plaintiff and the Class members.

52.     At all times during the relevant period, Defendants knew or should have known the Product included undisclosed levels of Heavy Metals and was not sufficiently tested for the presence and material risk of Heavy Metals.

53.     Defendants' Product included undisclosed levels of Heavy Metals due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished product. Defendants were or should have been aware of this risk.

54.     Defendants knew or should have known that Heavy Metals pose health risks to consumers.

55.     Defendants knew or should have known that they owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Product to the extent reasonably possible.

56.     Defendants knew or should have known that they owed consumers a duty of care to adequately test for Heavy Metals in the Product and the contributing ingredients.

57.     Based, in part, on Defendants' own representation that they manufactured the Product using the highest standards, Defendants knew or should have known consumers reasonably expect that the Product does not contain (or have a material risk of containing) Heavy Metals.

58.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, cadmium, and lead "dangerous to human health."[3]

59.     The FDA has acknowledged that "exposure to these [heavy metals] are likely to have the most significant impact on public health" and has prioritized them in connection with its

---

[3] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, available at https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed May 11, 2023).

CLASS ACTION COMPLAINT

Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals.[4]

60.     Heavy Metals bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed and the risk they pose increases over time and can remain in one's body for years.[5]

61.     Concerns over exposure to Heavy Metals, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of Heavy Metals in foods it sells to consumers.[6]

62.     Despite the known risks of exposure to Heavy Metals, Defendants have recklessly and/or knowingly sold the Product without disclosing to consumers like Plaintiff and members of the Class that the Product contains (or has a material risk of containing) Heavy Metals.

**B.     Arsenic**

63.     The Product contains (or has a material risk of containing) arsenic, which can cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, and neurological and

---

[4] *Environmental Contaminants in Food*, U.S. Food & Drug Administration, available at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed May 11, 2023).

[5] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018 (updated Sept. 29, 2021), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed May 11, 2023).

[6] *See e.g.*, *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food – Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed May 11, 2023); *see also* 21 CFR 172, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFR Search.cfm?CFRPart=172&showFR=1 (last accessed May 11, 2023).

immunological effects.[7] Exposure to arsenic can also cause diabetes, atherosclerosis, and cardiovascular disease.[8]

64.     Inorganic arsenic is highly toxic and a known cause of human cancers.

65.     "Studies have shown that consuming products with arsenic over time can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system."[9]

66.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA) as a maximum contaminant level.

67.     Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[10] The FDA has issued an action level guidance for inorganic arsenic in infant rice cereals of 100 ppb.[11]

---

[7] House Report at 10.

[8] J. Christopher States et al., *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis*, PLOS ONE, June 15, 2012, available at https://doi.org/10.1371/journal.pone.0038713 (last accessed May 11, 2023).

[9] Letter to FDA Acting Commissioner Janet Woodcock, signed by Senators Klobuchar, Blumenthal, Leahy, Duckworth, and Booker, June 22, 2021, available at https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432b-a543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-baby-food-recall.pdf (last accessed May 11, 2023) (citing *Arsenic and Children*, Dartmouth Toxic Metals Superfund Research Program, 2021, available at https://sites.dartmouth.edu/arsenicandyou/arsenic-and-children/ (last accessed May 11, 2023)).

[10] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post, Feb. 4, 2021, available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed May 11, 2023).

[11] *Inorganic Arsenic in Rice Cereals for Infants: Action Level Guidance for Industry*, FDA, Aug. 2020, available at https://www.fda.gov/media/97234/download#:~:text=The%20action%20level%20for%20inorganic,on%20sampling%20and%20testing%20results (last accessed May 11, 2023).

CLASS ACTION COMPLAINT

**C.  Cadmium**

68.  The Product contains (or have a material risk of containing) cadmium, which is considered a cancer-causing agent.[12]

69.  "[A]ny cadmium exposure should be avoided."[13]  Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss.[14]

70.  Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis.[15]

71.  Exposure to cadmium is also linked to cardiovascular disease and cancer.[16]

72.  Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children."[17]

73.  Cadmium, "displays a troubling ability to cause harm at low levels of exposure."[18] The U.S. Department of Health and Human Services has determined that cadmium and cadmium

---

[12] *Cadmium Factsheet*, Centers for Disease Control and Prevention, available at https://www.cdc.gov/biomonitoring/cadmium_factsheet.html (last accessed May 11, 2023).

[13] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*? Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 11, 2023).

[14] *Id.*

[15] *Cadmium Toxicity: What Health Effects are Associated with Acute High-Dose Cadmium Exposure?* Agency for Toxic Substances and Disease Registry, available at https://www.atsdr.cdc.gov/csem/cadmium/Acute-Effects.html (last accessed May 11, 2023).

[16] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection?* Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 11, 2023).

[17] *Is Homemade Baby Food Better? A New Investigation: Tests Compare Toxic Heavy Metal Contamination in Homemade Versus Store-Bought Foods for Babies*, Healthy Babies Bright Futures, Aug. 2022, at 69 ("Healthy Babies Bright Futures Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/ 2022-08/StoreVsHomemade_2022.pdf (last accessed May 11, 2023).

[18] *Id.*

compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[19]

74. Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequester[s] in [human] tissue."[20]

**III. The Material Omissions and Misrepresentations Misled and Deceived Reasonable Consumers**

75. The Omissions and Misrepresentations wrongfully convey to consumers that Defendants' Product is of a superior quality and has certain characteristics that it does not actually possess.

76. Defendants misleadingly cause consumers to believe their Product does not contain Heavy Metals due to the material Omissions and Misrepresentations, when in fact the Product contains or has a material risk of containing undisclosed levels of Heavy Metals, which is material information to reasonable consumers and Plaintiff.

77. Defendants wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) Heavy Metals in the Product.

78. Due to the Omissions and Misrepresentations, reasonable consumers, like Plaintiff, would not suspect the presence of Heavy Metals in the Product. Unlike Defendants, reasonable consumers are not able to independently detect the presence of Heavy Metals in the Product and are generally without the means to conduct their own scientific tests or to review scientific testing conducted on the Product. Moreover, information regarding the presence of Heavy Metals in the Product is in the exclusive possession of Defendants and not available to consumers. Defendants

---

[19] *Public Health Statement for Cadmium*, Agency for Toxic Substances and Disease Registry, available at https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed May 11, 2023).

[20] Stephen J. Genius et al., *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE, Nov. 21, 2012, available at https://doi.org/10.1371/journal.pone.0049676 (last accessed May 11, 2023).

chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the Product.

79.     Reasonable consumers must and do rely on Defendants to honestly report what their Product contains.

80.     Based on the impression created by the failure to disclose the Heavy Metals on the packaging, no reasonable consumer would expect, suspect, or understand that the Product contained or had a material risk of containing Heavy Metals.

81.     Defendants knew or should have known the Product contained or had a material risk of containing Heavy Metals.

82.     Defendants had a duty to ensure the Product was not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

83.     Defendants acted negligently, recklessly, unfairly, and/or intentionally with their deceptive packaging based on the material Omissions and Misrepresentations.

84.     Defendants knew that properly and sufficiently monitoring the Product for Heavy Metals in the ingredients and finished products was critical.

85.     In addition, Defendants knew or should have known that a reasonable consumer would consume the Product, leading to repeated exposure to and accumulation of Heavy Metals.

86.     Defendants knew or should have known they could control the levels of Heavy Metals in the Product by properly monitoring and testing for Heavy Metals at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

87.     The Omissions and Misrepresentations are material and reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiff.

88.     The Omissions and Misrepresentations make the Product's packaging deceptive based on the presence or risk of Heavy Metals in the Product.  Reasonable consumers, like Plaintiff, would consider the presence or risk of Heavy Metals in the Product a material fact when considering which rice products to purchase.

CLASS ACTION COMPLAINT

89.     Defendants knew, yet failed to disclose, that they were not sufficiently or adequately monitoring or testing the Product or ingredients used in the Product for Heavy Metals.

90.     The Omissions and Misrepresentations were misleading due to Defendants' failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of Heavy Metals in the Product.

91.     Defendants knew or should have known that the Product contained or may have contained undisclosed levels of Heavy Metals that were not disclosed on the packaging.

92.     Defendants knew or should have known that reasonable consumers expected Defendants to sufficiently monitor and test the Product and ingredients for Heavy Metals to ensure the quality of the Product.

93.     Defendants knew or should have known that reasonable consumers paid higher prices for the Product and expected Defendants to sufficiently test and monitor the Product and ingredients for the presence of Heavy Metals.

94.     The Omissions and Misrepresentations were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class to purchase a product they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

95.     As a result of Defendants' Omissions and Misrepresentations, Defendants were able to generate substantial sales, which allowed Defendants to capitalize on, and reap enormous profits from, Plaintiff and similarly situated consumers who paid the purchase price or premium for the Product.

96.     Plaintiff and other reasonable consumers would not have purchased the Product or would have paid less for it but for Defendants' Omissions and Misrepresentations concerning the presence (or material risk of the presence) of Heavy Metals in the Product.

**IV.  Defendants' Omissions and Misrepresentations Violate California and Other Similar State Laws**

97.  California law is designed to ensure that a company's claims about its products are truthful and accurate.

98.  Defendants have engaged in this long-term advertising campaign omitting the fact that the Product contains (or has a material risk of containing) Heavy Metals.

**V.  Plaintiff's Reliance Was Reasonable and Foreseeable by Defendants**

99.  Plaintiff read and relied upon the packaging of the Product when making her purchasing decision.  Had she known Defendants omitted and failed to disclose the presence of Heavy Metals on the Product's packaging, she would not have purchased the Product.

100.  Reasonable consumers, like Plaintiff, would consider the packaging of a product when deciding whether to purchase it.

**VI.  Defendants' Knowledge and Notice of Their Breach of Implied Warranties**

101.  Defendants had sufficient notice of their breach of implied warranties.  Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the Product. Defendants also had exclusive knowledge of their suppliers, and whether any suppliers provided ingredients that contained Heavy Metals.

102.  Defendants have not changed their packaging to include any disclaimer that the Product contains (or are at the risk of containing) Heavy Metals.

**VII.  Privity Exists with Plaintiff and the Proposed Class**

103.  Defendants knew that reasonable consumers such as Plaintiff and the proposed members of the Class would be the end purchasers of the Product and the targets of their advertising.

104.  Defendants intended that the packaging and implied warranties would be considered by the end purchasers of the Product, including Plaintiff and the proposed members of the Class.

105.  Defendants directly marketed to Plaintiff and the proposed Class through the Product's packaging.

106.    Plaintiff and the proposed members of the Class are the intended beneficiaries of the implied warranties.

## CLASS ACTION ALLEGATIONS

107.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and all others similarly situated, as members of the following class against Defendants:

> All persons who, during the fullest period allowed by law, purchased the Product for household use, and not for resale (the "Class").

> All persons who, during the fullest period allowed by law, purchased the Product for household use, and not for resale in the State of California (the "California Subclass").

108.    Excluded from the Class and Subclass (collectively, "Class") are Defendants, any of Defendants' parent companies, subsidiaries and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

109.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

110.    The members of the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class in a single action will provide substantial benefits to the parties and Court.

111.    Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

   a.    Whether Defendants owed a duty of care;

   b.    Whether Defendants owed a duty to disclose;

   c.    Whether Defendants knew or should have known that the Product contained or may contain Heavy Metals;

d.  Whether Defendants failed to disclose that the Product contained or may contain Heavy Metals;

e.  Whether the claims of Plaintiff and the Class serve a public benefit;

f.  Whether Defendants' packaging is false, deceptive, and misleading based on the Omissions and Misrepresentations;

g.  Whether the Omissions and Misrepresentations are material to a reasonable consumer;

h.  Whether the inclusion of Heavy Metals in the Product is material to a reasonable consumer;

i.  Whether the Omissions and Misrepresentations are likely to deceive a reasonable consumer;

j.  Whether Defendants had knowledge that the Omissions and Misrepresentations were material and false, deceptive, and misleading;

k.  Whether Defendants breached their duty of care;

l.  Whether Defendants breached their duty to disclose;

m.  Whether Defendants violated the laws of the State of California;

n.  Whether Defendants breached their implied warranties;

o.  Whether Defendants engaged in unfair trade practices;

p.  Whether Defendants engaged in false advertising;

q.  Whether Plaintiff and members of the Class are entitled to actual, statutory, treble, and punitive damages; and

r.  Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

112.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.  Individual questions,

if any, are not prevalent in comparison to the numerous common questions that dominate this action.

113.     Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

114.     Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

115.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would not be feasible for members of the Class to redress the wrongs done to them.

116.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

117.     As a result of the foregoing, class treatment is appropriate.

<u>COUNT I</u>
**Violations of The California Unfair Competition Law, California Business & Professions Code §§17200, *et seq.*, Against Defendants on Behalf of the Class, or Alternatively, the California Subclass**

118.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

119.     Plaintiff brings this claim individually and on behalf of the Class members against Defendants.

120.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

121.     Plaintiff, the Class members, and Defendants are each a "person" under California Business & Professions Code §17201.

**Fraudulent**

122.     Defendants' failure to disclose the presence (or material risk of presence) of Heavy Metals in the Product is likely to deceive the public.

**Unlawful**

123.    As alleged herein, Defendants' failure to disclose the presence (or material risk of presence) of Heavy Metals in the Product violates at least the following laws:

- The CLRA, California Business & Professions Code §§1750, *et seq.*;
- The False Advertising Law, California Business & Professions Code §§17500, *et seq.*, and
- The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§109875, *et seq*.

**Unfair**

124.    Defendants committed unfair practices by selling the Product without adequate testing or screening for the Heavy Metals, which rendered the Product adulterated and misbranded.

125.    Defendants' conduct with respect to the packaging and sale of the Product is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendants' conduct, if any, does not outweigh the gravity of the harm to their victims.

126.    Defendants' conduct with respect to the packaging and sale of the Product is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

127.    Defendants' conduct with respect to the packaging and sale of the Product is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

128.    Defendants were obligated to disclose the presence of Heavy Metals in the Product because:

a.    Defendants had exclusive knowledge of the presence of Heavy Metals in the Product that was not known or reasonably accessible to Plaintiff and the Class; and

b.    Defendants actively concealed the presence of Heavy Metals from Plaintiff and the Class.

129. Plaintiff and the Class members relied upon the Product's packaging provided to them by Defendants when making their purchasing decisions. Had Plaintiff and the Class members known Defendants failed to disclose the presence of Heavy Metals on the Product's packaging, they would not have purchased the Product.

130. In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

131. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Product in the future if she can be assured that the Product is safe for consumption and does not contain Heavy Metals.

132. On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Product, which was unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

133. Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the Unfair Competition Law can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**COUNT II**
**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *et seq.*, Against Defendants on Behalf of the Class, or Alternatively, the California Subclass**

134. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

135. Plaintiff brings this claim individually and on behalf of the Class members against Defendants.

CLASS ACTION COMPLAINT

136. California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

137. As set forth herein, Defendants' failure to disclose the presence (or risk of presence) of Heavy Metals in the Product is likely to deceive the public.

138. Defendants knew the Product contained undisclosed levels of Heavy Metals. Defendants had a duty to disclose the presence of Heavy Metals, and by omitting their presence, misled consumers.

139. Defendants knew, or reasonably should have known, that these Omissions and Misrepresentations were misleading to reasonable consumers.

140. Had Defendants disclosed the presence (or risk of presence) of Heavy Metals in the Product or made consumers aware of their failure to disclose, Plaintiff and members of the Class would not have purchased the Product.

141. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Product in the future if they can be assured that the Product does not contain Heavy Metals.

142. Plaintiff and the members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Product.

143. Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the False Advertising Law can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**Violations of California's Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*., Against Defendants on Behalf of the Class, or Alternatively, the California Subclass**

144.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

145.    Plaintiff brings this claim individually and on behalf of the Class members against Defendants.

146.    Plaintiff and each proposed Class member are "consumers," as that term is defined in California Civil Code §1761(d).

147.    The Product is a "good," as that term is defined in California Civil Code §1761(a).

148.    Plaintiff, the Class members, and Defendants are each a "person" as that term is defined in California Civil Code §1761(c).

149.    Plaintiff and each of the Class member's purchases of the Product constitute "transactions" as that term is defined in California Civil Code §1761(c).

150.    Defendants' conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

   a.    California Civil Code §1770(a)(5), by failing to make any mention of Heavy Metals in the Product;

   b.    California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Product was of a particular standard, quality, or grade, when they were of another; and

   c.    California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Product with intent not to sell it as advertised.

151.    The Omissions and Misrepresentations were material as reasonable consumers such as Plaintiff and the members of the Class would deem the presence of Heavy Metals important in determining whether to purchase the Product.

152.    Defendants were obligated to disclose the presence of Heavy Metals in the Product because:

CLASS ACTION COMPLAINT

a. Defendants had exclusive knowledge of the presence of Heavy Metals in the Product, which was not known or reasonably accessible to Plaintiff and the members of the Class; and

b. Defendants actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class.

153. As a direct and proximate result of these violations, Plaintiff and the Class members have been harmed, and such harm will continue unless and until Defendants is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Product.

154. Contemporaneously with this complaint, counsel for Plaintiff and the Class members sent written notice (via U.S. certified mail, return receipt requested) that their conduct is in violation of the CLRA. If Defendants fail to provide appropriate relief for their violations of the CLRA §§1770(a)(5), (7), and (9) within thirty days of receipt of Plaintiff's notification, Plaintiff will amend this Complaint to seek all available damages under CLRA §1780.

155. Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the False Advertising Law can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**COUNT IV**
**Breach of Implied Warranty of Merchantability Against Defendants on Behalf of the Class or, Alternatively, the State Subclass**

156. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

157. Plaintiff brings this claim individually and on behalf of the Class members against Defendants.

158. Defendants are merchants engaging in the sale of goods to Plaintiff and the members of the Class.

159. There was a sale of goods from Defendants to Plaintiff and the members of the Class.

160. As set forth herein, Defendants manufactured and sold the Product, and prior to the time the Product was purchased by Plaintiff and the members of the Class, impliedly warranted that the Product was of merchantable quality and fit for their ordinary use (consumption by consumers).

161. Plaintiff relied on these implied warranties when she purchased the Product.

162. The Product was not fit for its ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals that do not conform to the packaging.

163. These promises became part of the basis of the bargain between Defendants and Plaintiff and the members of the Class, and thus constituted implied warranties.

164. Defendants breached their implied warranties by selling Product that contain Heavy Metals.

165. Privity exists because Defendants manufactured and sold the Product directly to Plaintiff and the members of the Class.

166. Defendants impliedly warranted to Plaintiff and the members of the Class that the Product did not contain contaminants such as Heavy Metals by failing to mention or disclose the presence of Heavy Metals.

167. As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiff and the members of the Class suffered actual damages as they purchased the Product that was worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals.

168. Plaintiff, on behalf of herself and the members of the Class, seek actual damages for Defendants' failure to deliver goods that conform to their implied warranties and resulting breach.

**COUNT V**
**Unjust Enrichment Against Defendants on Behalf of the Class or,**
**Alternatively, the State Subclass**

169.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

170.    Plaintiff brings this claim individually and on behalf of the Class members against Defendants.

171.    Substantial benefits have been conferred on Defendants by Plaintiff and the members of the Class through the purchase of the Product.  Defendants knowingly and willingly accepted and enjoyed these benefits.

172.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Product would not contain Heavy Metals.  As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

173.    Defendants were obligated to disclose the presence of Heavy Metals in the Product because:

      a.    Defendants had exclusive knowledge of the presence of Heavy Metals in the Product that were not known or reasonably accessible to Plaintiff and the members of the Class; and

      b.    Defendants actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class.

174.    Defendants' acceptance and retention of the benefits of the payments from Plaintiff and the members of the Class under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the members of the Class.

175.    Plaintiff and the members of the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

176. Plaintiff and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment against Defendants as to each and every count, including:

(a) An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

(b) An order enjoining Defendants from selling the Product until the Heavy Metals are removed or full disclosure of the presence of same appears on all packaging;

(c) An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Product;

(d) An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

(e) An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

(f) An order requiring Defendants to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(g) An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(h)     An order requiring Defendants to pay punitive damages on any count so allowable;

(i)     An order awarding attorneys' fees and costs to Plaintiff and the Class; and

(j)     An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims so triable.

Dated: August 18, 2025          **MILBERG COLEMAN BRYSON**
                                 **PHILLIPS GROSSMAN, PLLC**


                                 */s/ Trenton R. Kashima*
                                 Trenton R. Kashima (CA SBN No. 291405)
                                 402 West Broadway St., Suite 1760
                                 San Diego, CA 92101
                                 Tel: (619) 810-7047
                                 tkashima@milberg.com

                                 Nick Suciu*
                                 **MILBERG COLEMAN BRYSON**
                                 **PHILLIPS GROSSMAN PLLC**
                                 6905 Telegraph Road, Suite 115
                                 Bloomfield Hills, MI 48301
                                 Tel: (313) 303-3472
                                 nsuciu@milberg.com

                                 Jason P. Sultzer*
                                 Daniel Markowitz*
                                 **SULTZER & LIPARI, PLLC**
                                 85 Civic Center Plaza, Suite 200
                                 Poughkeepsie, New York 12601
                                 Tel: (845) 483-7100
                                 Fax: (888) 749-7747
                                 sultzerj@thesultzerlawgroup.com
                                 markowitzd@thesultzerlawgroup.com


                                 *Pro hac vice forthcoming*